IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION


**MS. MARIA SALCIDO**                                                            **PLAINTIFF**


**VERSUS**                                      **CIVIL ACTION NO. 2:11-CV-173KS-MTP**


**THE UNIVERSITY OF SOUTHERN MISSISSIPPI,**
**DR. MARTHA SAUNDERS, INDIVIDUALLY AND OFFICIALLY,**
**DR. REBECCA WOODRICK, INDIVIDUALLY AND OFFICIALLY,**
**DR. CHARLES WEST, INDIVIDUALLY AND OFFICIALLY**            **DEFENDANTS**


### MEMORANDUM OPINION AND ORDER

This matter is before the Court on a Motion to Dismiss or in the Alternative, for Summary Judgment filed on behalf of The University of Southern Mississippi, Dr. Martha Saunders, Dr. Rebecca Woodrick and Dr. Charles West **[#s 7 & 9]**.  The Court, having reviewed the motion, the pleadings and exhibits on file, the authorities cited and being advised that the Plaintiff has failed to respond to the motion finds that it is well taken and should be granted.  The Court finds specifically as follows:


### BACKGROUND

The Plaintiff, Maria Salcido, enrolled as a part-time student in the Marriage and Family Therapy (MFT) program in the Department of Psychology at the University of Southern Mississippi (USM) in the Fall semester of 2006.  On July 6, 2011, Salcido filed this suit claiming she has been discriminated against because of her race, national

origin and ethnicity and denied specific constitutional rights, among them Procedural and Substantive Due Process rights, Equal Protection, and First Amendment and Liberty Interest rights.  She filed her federal law claims pursuant to 42 U.S.C. § 1983. In addition, Salcido alleges a state law breach of contract claim.

## LAW AND ANALYSIS

The Defendants first assert that Salcido's claims are insufficiently pled and cannot overcome the individual defendants' entitlement to qualified immunity.  The Fifth Circuit has held that "government officials performing discretionary functions are protected from civil liability under the doctrine of qualified immunity if their conduct violates no 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Sorenson v. Ferrie*, 134 F.3d 325, 327 (5th Cir. 1998) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738, 73 L. Ed. 2d 396 (1982)).  The shield of qualified immunity is available to government officials sued under 42 U.S.C. § 1983 for constitutional torts in their individual capacity.  *See Anderson v. Creighton*, 483 U.S. 635, 649 (1987).

Under the two step analysis employed by the Fifth Circuit in reviewing claims wherein qualified immunity has been asserted, the Court must first determine "whether the plaintiff has asserted the violation of a clearly established constitutional right.  If so, the court decides whether the defendant's conduct was objectively reasonable." *Sorenson*, 134 F.3d at 327 *(*quoting *Coleman v. Houston Indep. Sch. Dist.,* 113 F.3d 528, 533 (5th Cir. 1997) (applying the two-prong test of *Siegert v. Gilley*, 500 U.S. 226,

231-32, 111 S. Ct. 1789, 1792-93, 114 L. Ed. 2d 277 (1991)).  The first step "is subdivided into three questions: (1) whether a constitutional violation is alleged; (2) whether the law regarding the alleged violation was clearly established at the time of the alleged violation; and (3) whether the record shows that a violation occurred." *Dudley v. Angel*, 209 F.3d 460, 462 *(quoting Kerr v.Lyford,* 171 F.3d 330, 339 (5th Cir. 1999) *(citing Rich v. Dollar*, 841 F.2d 1558, 1563 (11th Cir. 1988)).

The United States Supreme Court has set the standard for determining whether a complaint is sufficient to survive a motion to dismiss based upon qualified immunity, calling for a "flexible plausibility standard".  Under this standard, the plaintiff is required "to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed. 929 (2007).  In order to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face". *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1940 (2009) (quoting *Twombly*, 550 U.S. at 570). A claim has facial plausibility when the Plaintiff "pleads factual content that allows the court to draw the reasonable inference that the Defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1940 (citing *Twombly*, 550 U.S. at 556).  *See also Mendenhall v. Riser*, 213 F.3d 226, 230 (5th Cir. 2000).

A plaintiff cannot do this by merely peppering the complaint with legal conclusions. Instead the complaint must be supported by factual allegations that support more than a mere possibility that some defendant is guilty of wrongful conduct.

*Iqbal*, 129 S. Ct. at 1940.  Factual allegations are entitled to a presumption of truth, while legal conclusions are not.  *Iqbal*, 129 S. Ct. at 1940 (citing *Twombly*, 55 U.S. at 535).  The pleadings must nudge plaintiff's claims "across the line from conceivable to plausible."  *Id.*

Against this backdrop, the Defendants assert that Salcido's bare bones complaint fails to plausibly suggest the violation of any constitutional right and is insufficient under Fed. R. Civ. P. 8(a)(2).  They have, therefore, moved to dismiss her claims against all the Defendants in their entirety.


I.     **Invidious Discrimination/Equal Protection**

In the instant case, Salcido's allegations center around her claim that the defendants discriminated against her by not providing her an externship or practicum hours because of her race, national origin and ethnicity.  Comparing the allegations of Salcido's Complaint to *Twombly* and its prodigy, she is required to show facts that plausibly demonstrate defendants adopted and implemented a policy in the MFT program at USM of assigning practicum hours and externships based upon race, national origin or ethnicity.  More specifically, Salcido must show that each separate defendant purposely denied externship and intentionally failed to assign practicum hours to her for the specific purpose of thwarting her efforts at obtaining a Master's degree in MFT because of her race, national origin or ethnicity.

Salcido's claims of invidious discrimination must show more than the mere possibility that the conduct actually occurred, but that it occurred "because of" the

-4-

defendants' purposeful intent to effect the adverse consequences on the plaintiff, Maria Salcido, because of her race, national origin or ethnicity.  *See Iqbal, supra*.

The facts Salcido alleges are that she is a Latino female with a good GPA and that she was denied the 500 practicum hours she needed to graduate and was denied an externship because of her race.  She claims these denials stemmed from a bad evaluation she gave one of her professors, Dr. Mary Ann Adams, who is not a defendant in this action.  She goes on to allege that defendant Woodrick denied her a hearing on her AA-EEO complaint, presumably because of her race, and that Dr. Saunders, President of USM, being Defendant Woodrick's supervisor, is vicariously liable for this  alleged denial.  Dr. West is presumably "guilty" because he was the head of the MFT Department at the time these events allegedly occurred.

These bare factual allegations are seasoned with healthy doses of legal conclusions and fall far short of plausibly suggesting a discriminatory state of mind on the part of any defendant.  As set forth below, each of these defendants is entitled to the defense of qualified immunity which shields government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights" of which any reasonable person would have known.  *Mitchell v. Forsyth*, 472 U.S. 511 (1985) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818).  Qualified immunity is both a defense to liability and a limited "entitlement" not to stand trial or face the burden of litigation.  *Mitchell* 472 U.S. at 527.   A plaintiff cannot "plead the bare elements of [her] cause of action" and expect it to overcome defendants' qualified immunity.  *Iqbal* 129 S.Ct. at 1954.

Dr. Saunders is supposedly liable because "[Defendant Woodrick] is the agent

and representative of Dr. Saunders, the President of USM." (*See* Complaint, Page 4, Paragraph 15).   While it is true that Dr. Saunders is the President of USM, it is a broad characterization to state as a fact that Defendant Woodrick is her agent and representative and that therefore, Dr. Saunders is liable for the alleged bad conduct of Woodrick.  In actuality, this is nothing more than a conclusory legal statement without factual context.  Moreover, Dr. Saunders can only be liable for her own conduct since in a Section 1983 suit, there is no vicarious liability.  *Iqbal* 129 S.Ct. at 1949.  Since Salcido's complaint states no facts that remotely tie Dr. Saunders to any purposeful discrimination, the complaint shall be dismissed against her in her individual capacity as being deficient under Rule 8 of the Fed. R. Civ. Proc. and for failure to state a claim under Fed. R. Civ Proc. 12(b)(6).

Salcido's factual allegations against Dr. Woodrick are likewise insufficient to survive a motion to dismiss in the face of this defendant's qualified immunity defense. The gist of the allegations are that Dr. Woodrick is "in charge of the Office of Administrative Action/Equal Employment Office (AA-EEO) at USM." (*See* Complaint, Page 4, Paragraph 13).  Further, Salcido alleges [she] "followed the USM procedure regarding grievances." (*See* Complaint, Page 3, Paragraph 13).  Salcido states she is entitled to a hearing as a result of filing this "grievance" and that because Dr. Woodrick did not provide a hearing, her constitutional rights have been violated, and Dr. Woodrick is personally liable for it.

Exhibit "A" to Salcido's Complaint is undisputedly a Statement of Complaint filed with the Office of AA-EEO.  On its face, it is not a grievance pursuant to the University Grievance Policy available in the USM Student Handbook and referenced in the

Graduate Student Handbook of the Department of Psychology at the University of Southern Mississippi.  Therefore, Salcido's factual allegation in Paragraph 13 that "[she] has followed the USM procedure regarding grievances" is in error.

The pleadings reveal that several options were available to Salcido under the Graduate Student Handbook and the USM Student Handbook to appeal various decisions made by the MFT faculty concerning her grades or other academic related matters.  Specifically, pursuant to the Graduate Student Handbook, Page 19, as a general proposition students may file a grievance and/or appeal for any decisions made by the University, faculty or administrators.  A procedure exists for appeal of an academic decision, appeal of grades, a University Grievance Policy and a procedure for sexual harassment and/or discrimination complaints through the Office of Affirmative Action/Equal Employment Opportunity.

Salcido availed herself of but one, the AA-EEO avenue. This is undisputed. Nevertheless, Salcido, with no factual context whatsoever, makes the quantum leap that the AA-EEO complaint she did file (1) entitles her to an automatic, constitutionally mandated due process hearing, and (2) failure to give her a hearing on that complaint rises to the level of a violation of her Fourteenth Amendment procedural and substantive due process rights.  What Salcido does not plead is that almost simultaneous with her filing the AA-EEO complaint, she filed a virtually identical complaint with the Office of Civil Rights (OCR) and that with the full cooperation of USM, this complaint was fully investigated and ruled upon by OCR and found to lack merit.  During this OCR process, Salcido was informed by letter from Dr. Woodrick's office that investigation of her AA-EEO complaint was being suspended, pending the

outcome of the OCR investigation.

Therefore, even assuming all the 'facts' Salcido has pled concerning Dr. Woodrick to be true, the pleadings are insufficient to show purposeful discrimination on the part of Defendant Woodrick. Stated differently, Salcido has failed to allege any facts to indicate Dr. Woodrick refused to investigate her complaint and provide her a hearing for the specific purpose of effecting adverse consequences on Maria Salcido, i.e. to block her ability and opportunity to receive a master's degree. Therefore, Salcido's claim against Dr. Woodrick for discrimination and violation of her equal protection rights and various other constitutional rights is not plausible on its face. Salcido has failed to state any fact that would "nudge" her claim of invidious discrimination/equal protection and other constitutional violations across the line from conceivable to plausible. *See Iqbal, supra*.

While it is remotely possible that Dr. Woodrick and the other individual defendants are biased toward persons of Latino descent, it is not plausible on the face of the complaint that such is true, and there is no fact that points to intentional and purposeful denial of a hearing because of bias toward the Latino race and Salcido particularly. *See El-Marazku v. Univ. of Wis. Bd. of Regents*, 134 F.3d 374; 1998 WL 23690 (7th Circuit 1998) (to sustain an equal protection claim, a plaintiff must show both disparate treatment and an intent to discriminate based on the plaintiff's membership in a particular class of citizens).

What is clear from the pleadings is that Dr. Woodrick suspended the investigation and hearing (assuming plaintiff had a property interest at stake that entitled her to constitutional due process) because of the OCR complaint. It is equally

-8-

plausible that the deficiency in practicum hours and externship decisions as the same relate to Salcido were based upon a reasoned academic decision making process rather than upon any purposeful, intentional racial animus a particular defendant had toward Maria Salcido because she is of Latino descent.

Indeed, it is important to note that Salcido was not dismissed from the MFT program, she voluntarily withdrew.  Since Salcido was never dismissed from the MFT program, the acts of discrimination and retaliation about which she complains are best characterized as pure academic decisions made by MFT faculty.  It has long been the law that no formal hearing is required for academic decisions "because such academic decisions require an expert evaluation of cumulative information and [are] not readily adopted to the procedural tools of judicial or administrative decision making".  *Ku v. Tennessee*, 322 F.3d 431, 436 (6th Cir. 2003) (quoting *Bd. of Curators of Univ. of Mo. v. Horowitz*, 435 U.S. 78, 91; 98 S.Ct. 948; 55 L.Ed.2d 124).  The assignment of practicum hours and externship appointments fall into the realm of academic matters.

As in *Ku*, Salcido relies on the student handbook as the basis for her constitutionally protected property interest.  The MFT Student Handbook makes clear that the assessment of a student's ability to complete the clinical requirements is an ongoing process.  It is clear that Salcido, in the reasoned academic judgment of the faculty, was struggling in this area.  The gist of Salcido's complaint is, apparently, that she disagrees with that academic judgment.  Salcido's complaint attempts to overturn these academic decisions through the OCR and AAEEO processes by claiming discrimination on the basis of race.  Not one fact does she offer, however, that plausibly demonstrates any discriminatory act on the part of any defendant, including Dr.

-9-

Woodrick.  The complaint against Dr. Woodrick is insufficiently pled to overcome defendant's qualified immunity defense and shall be dismissed as to Dr. Woodrick in her individual capacity.

Salcido likewise has failed to state a set of facts in her complaint to show that Defendant, Dr. Charles West, as head of the MFT Department adopted, implemented or carried out any policy to purposely discriminate against her.  Salcido's complaint lumps the defendants together as if they are one individual.  She sometimes refers to the defendants as "the Department" (See Complaint, Exhibit "A", Pages 4 and 5, Paragraphs 14 and 16) or "Department Members" (See Complaint, Exhibit "A", Page 5, Paragraph 17).  She refers to individuals in the department, for example, Dr. Mary West and Dr. Jeff Hinton, who are not defendants, as if actions they allegedly took against her can be imputed to Dr. Charles West and the other named defendants.  However, again vicarious liability is inapplicable to Section 1983 claims, and Salcido is required to plead what each defendant has done individually to allegedly violate her constitutional rights.  She has not done so.

Instead, Salcido refers to Dr. Charles West by name only three times in her complaint.  (*See* Complaint, Pages 4 and 5, Paragraphs 14 and 16).  In summary, she pleads that "the Department" harbors a cultural bias toward her and the "subordinates of Dr. West have made this clear."  Further that "Dr. West has not rectified the bias situation..." (*See* Complaint, Pages 4 and 5, Paragraph 14).  Slacido goes on in Paragraph 16, Page 5 of the Complaint to state as a fact that "The Department headed by Dr. West, [did or did not do certain things]" and that "her race, national origin and/or ethnicity were clearly discriminating motivating factors in this regard." (*See* Complaint,

Page 5, Paragraph 16).  The complaint is devoid of any factual enhancement to support these conclusory statements.

The complaint contains a substantial number of other examples of "shotgun allegations" against groups of unnamed persons.  Implicit in the complaint is that Dr. West and the other named defendants are responsible for whatever these unnamed individuals did or failed to do to allegedly violate plaintiff's constitutional rights.  Salcido states "she has been deprived of her equal protection rights because of her race [and that] [o]thers similarly situated have not been[ ]."  She has not shown in her pleadings how the decision makers in the MFT program assigned clients differently to one race (Latinos) as opposed to other races.  Likewise, she has not shown how the Latino race has been given less externships or no externships as opposed to those of other races. In other words, Salcido has not pled one fact that would show the defendants veered away from the normal procedure of providing students with clients for practicum hours or assigning externships.  Salcido has not shown she was purposely denied an externship at all.  She simply states she did not receive one.  The factual allegations against Dr. Charles West fall far short of stating any plausible claims for relief against him, and he shall be dismissed in his individual capacity from this cause based upon qualified immunity.

## II.    Procedural and Substantive Due Process

Salcido claims her procedural due process rights have been violated because "...she has sought a Due Process hearing she is entitled but has not been provided such a hearing."  (*See* Complaint, Page 3, paragraph 13).  Salcido claims her due

process rights arise from "...the Faculty Handbook, the Marriage & Family (MFT) Student Handbook, her Departmental Handbook, and the Graduate Bulletins."

Salcido claims that Dr. Woodrick, as head of the AA-EEO Office at USM, is guilty of violating her due process rights for failing to give her a hearing on her AA-EEO complaint and that because Woodrick is the agent and representative of Dr. Saunders, the President of USM, Dr. Saunders is liable as well. Presumably both Dr. Woodrick and Dr. Saunders failed to give her a hearing because of their dislike of the Latino race and to retaliate against the plaintiff for giving Dr. Mary Ann Adams, one of Salcido's professors, a negative evaluation. She further claims Dr. Charles West , as head of the MFT department, "has [failed] to rectify the bias situation as summarized herein." (*See* Complaint, Page 4, Paragraph 14). Finally, she pleads that "the same applies to the other individual defendants and USM." (Complaint, Page 4, Paragraph 14).

Taking every fact pled as true, Salcido does not indicate what any particular defendant did to violate her due process rights, assuming she had a property interest in some benefit under the AA-EEO procedure which entitled her to a hearing. She simply is not clear in her pleadings as to what property interest is at stake. It cannot be disputed that Salcido exercised but one avenue of complaint pursuant to USM policy or procedure, the AA-EEO procedure. In addition, she filed an OCR complaint which also cannot be disputed, and such was investigated with the full cooperation of USM. OCR found the complaint to be without merit.

Salcido was involved with this OCR process and investigation and was informed by USM of the status of her AA-EEO complaint while the OCR investigation was ongoing and after OCR's ruling. Salcido's complaint does not plausibly state a claim for

a procedural or substantive due process violation.  It is simply a series of conclusory statements both legal and factual, devoid of any context or basis.  As such, it shall be dismissed for failure to state a claim.

### III.  <u>Liberty Interest</u>

Salcido's complaint fails to state a claim against any individual defendant for a Liberty Interest violation.  Indeed, it is a stretch to say Salcido even attempted to plead a Liberty Interest violation.  She mentions the words "Liberty Interest" in Paragraph 31 of the complaint.  That is the sum total of any "facts" that remotely state a claim for a Liberty  Interest violation. The complaint is devoid of any factual fabric that would indicate what any individual defendant did to knowingly and purposefully violate any Liberty Interest rights she might have. Salcido has failed to state a claim for a Liberty Interest violation under the *Iqbal* standards, and each individual defendant is entitled to be dismissed from this claim based upon qualified immunity.

### IV.  <u>First Amendment Retaliation</u>

The precise speech Salcido claims is protected is not readily apparent on the face of her complaint.  Nevertheless, she asserts under 42 U.S.C. § 1983 that her First Amendment rights were violated.  According to Salcido,  "[she] complained about the conduct of these faculty members and was retaliated against for doing so.  She spoke out about this public concern and was retaliated against for doing so." (*See* Complaint, Page 5, Paragraph 17).  Salcido goes on to say "[she] criticized professors in the

department for not having sufficient experience with foreign students... and the retaliation was unremitting." (*See* Complaint, Page 5, Paragraph 18).  Finally, she claims that her "life and academic pursuits were made particularly difficult after she complained about Dr. Mary Ann Adam's (sic) lack of experience with foreign students." (*See* Complaint, Page 6, Paragraph 20).  The foregoing is the only speech Salcido mentions in her complaint.  Once again, Salcido's complaint is inexact as to what she said to whom that ignites her First Amendment rights.

The First Amendment provides protection against retaliatory conduct when a person engages in protected speech.  While Salcido is not an employee, her claims of a First Amendment violation can be analyzed under the employer/employee framework.  To establish a First Amendment violation, she must show she suffered (1) an adverse action, (2) she spoke on a matter of public concern, (3) her interest in speaking outweighed USM's interest in the provision of a public service in educating students, (4) her speech precipitated the adverse action.  *Alexander v. Eeds*, 392 F.3d 138 (5th Cir. 2004); *Garcetta v. Ceballos*, 547 U.S. 410, 126 S.Ct. 1951, 164 L.Ed.2d 689 (2006); *Pickering v. Bd. of Education*, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968).

Salcido has failed to plausibly state any of the above elements on the face of her pleadings.  As an example, the speech she references on the face of her pleadings is not protected speech.  Whether a person's speech is protected speech and is a matter of public concern turns on whether the affected individual speaks "primarily as a citizen rather than [simply a student.]"  *Dorsett v. Bd. of Trustees State Colleges & Universities*, 940 F.2d 121 (5th Cir. 1998).  Under the *Connick* test, ("the content-form-context-test")

-14-

the speech Salcido identifies in her complaint is not constitutionally protected speech. *Connick v. Meyers*, 461 U.S. 138, 103 S.Ct. 1684, 756 L.Ed. 708 (1983).

Salcido's criticism of professors and her complaint about Mary Ann Adams viewed in context was done in her capacity as a student, within the Department at the University and through University avenues, such as her faculty evaluation of Dr. Adams. The faculty evaluation by Salcido is clearly not protected speech made by a citizen as opposed to a student in the program.  Likewise, Salcido pleads no facts to show she was speaking on a matter of public concern when she criticized professors in the MFT department.  Therefore, her complaint fails under *Iqbal* and fails as a matter of law. Stated differently, Salcido has totally failed to show any individual defendant violated a clearly established First Amendment right and therefore, each individual defendant is entitled to qualified immunity.

## V.    Claims Against USM and the Individual Defendants in Their Official Capacities Pursuant to 42 U.S.C. § 1983

In her Complaint Salcido  "seeks relief pursuant to 42 U.S.C. § 1983 and its jurisdictional counterparts" for purported violations of Procedural and Substantive Due Process, Equal Protection Rights and First Amendment Rights.  (*See* Complaint, Page 1, Paragraph 4).  She alleges a violation of her Liberty Interest in Paragraph 31 on Page 8 of the Complaint, also citing § 1983 as her statutory vehicle for recovery.

However, in *Will v. Michigan State Dept. Of Police*, the United States Supreme Court held that neither a State nor its officials acting in their official capacities are "persons" under § 1983. *Will*, 491 U.S. 58, 71 (1989).  The Fifth Circuit has also

recognized that "...arms of the State are not 'persons' under § 1983." *Stotter v. University of Texas at San Antonio*, 508 F.3d 812, 821 (5ᵗʰ Cir. 2007).  Therefore, all of Salcido's constitutional torts alleged against the University of Southern Mississippi and the individual defendants in their official capacities fail as a matter of law and shall be dismissed.


     **VI.**    **Contract Claim**

       Salcido claims in Count II of her complaint that "her contractual rights have been violated."  She makes vague references to "written contractual entitlements, rights and promises, made..., prepared by...and written by USM [ ]."  The "contractual" rights Salcido presumably claims are for "practicum & externship opportunities she is entitled to" but was not given by the defendants.  (*See* Complaint, Page 9, Paragraph 33).  Her target in Count II appears to be USM.  Yet, she points to not one sentence in any handbook that guarantees a part-time student or any student for that  matter, an externship or practicum hours.  In fact, the MFT Student Handbook disavows that very contention.

       The Mississippi Supreme Court has recently reiterated that "a basic principle of the law of contracts is that a contract is not formed between the parties absent the essential elements of offer, acceptance, and consideration." *Whiting v. University of Southern Miss.*, 62 So.3d 907 (2011) (citing *Gatlin v. Methodist Med. Ctr, Inc.*, 772 So.2d 1023, 1029 (Miss. 2000) (citing *Putt v. City of Corinth*, 579 So.2d 534, 538 (Miss. 1991).  Since Salcido has pointed to no "contract provisions" that obligates or

guarantees USM to provide an externship and/or guarantees USM to give plaintiff 500 practicum hours (an offer), she fails to state a claim for a contract violation.

Salcido has not properly pled a viable contract claim against any defendant named in her complaint for other reasons as well.  It is true that the Mississippi Supreme Court has held in *Univ. of So. Miss. v. Williams*, 891 So.2d 160 (2004) that the relationship between a student and a university is contractual in nature and that provisions in a handbook may implicate certain contract principles such as the duty of good faith and fair dealing.  However, Salcido has totally failed to point to any handbook provision wherein she was guaranteed rights that USM failed to honor or facts that show USM acted arbitrarily or capriciously when making decisions that impacted her matriculation through the MFT program.  Therefore, Salcido has failed to state a claim against USM or any of the individual defendants for any contract violation.

Moreover, as in *Whiting*, no individual defendant is a party to any contract with Salcido.  Salcido's alleged contract claims are in reality for tortious breach of contract and tortious interference with contract which are governed by the Miss. Torts Claim Act. (MTCA).  Miss. Code Ann. § 11-46-3(1).  *Whiting v. USM*, *supra*.  Salcido has not complied with the MTCA in that she did not file a Notice of Claim as required by § 11-46-11 prior to filing her suit.  Therefore, her "contract claim" against any individual defendant fails as a matter of law.

This same principle applies to her "contract" claim against the University.  It is obvious Salcido has no written contract with the University.  At best, she has a contractual type relationship with USM wherein the term of good faith and fair dealing is implied from whatever handbook provisions she is referencing in her complaint, if any.

-17-

The University, which is an arm of the State, is "immune from suit at law or equity on account of any wrongful or tortious act or omission or breach of any implied term or condition of any warranty or contract."  Miss Code Ann. § 11-46-3(1).

The Mississippi Supreme Court has interpreted the phrase "any wrongful or tortious act or omission or breach of implied term of condition of any warranty or contract" to mean that the MTCA covers both tortious breach of "contract and breach of implied terms and warranties of a contract."  *Whiting,* 62 So.3d at 916 (citing *City of Jackson v. Estate of Stewart, ex rel., Womack*, 908 So.2d 703, 710 (Miss. 2005). Therefore, the MTCA applies to Salcido's contract claims and the Court finds that she has failed to comply with the MTCA by filing a notice of claim prior to filing this suit against USM.  Miss. Code Ann. § 11-46-11.  Therefore, as a matter of law, her claim against both the University and the individual defendants for contractual violations fail as a matter of law and shall be dismissed.

Based on the foregoing, the Court finds that all claims against the individual defendants shall be dismissed based upon their qualified immunity defense and that all § 1983 claims against USM, as an arm of the State, or persons in their official capacities, shall be dismissed pursuant to *Will v. Michigan State Dept. Of Police*, *supra*. All state law claims shall be dismissed since no contract claim has been stated against any defendant as a matter of law.  Further, all "contract" claims shall be dismissed pursuant to the MTCA since Salcido failed to comply with the Notice requirement of the Act.  Miss. Code Ann. § 11-46-11.  Further, the Court finds that all acts done by any of the individual defendants were of a discretionary nature (Miss. Code Ann. § 11-46-9-(1)(d)) and were academic decisions not suited for judicial review.

IT IS THEREFORE ORDERED AND ADJUDGED that the Motion to Dismiss or in the Alternative, for Summary Judgment filed on behalf of The University of Southern Mississippi, Dr. Martha Saunders, Dr. Rebecca Woodrick and Dr. Charles West **[#s 7 & 9]** is granted and the Complaint filed on behalf of Maria Salcido is dismissed with prejudice as to all defendants. A separate judgment shall be entered herein in accordance with Rule 58, Federal Rules of Civil Procedure.

SO ORDERED AND ADJUDGED this the 28th day of February, 2012.


*s/ Keith Starrett*
UNITED STATES DISTRICT JUDGE