# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# HATTIESBURG DIVISION

**MARIA SALCIDO**                                                                              **PLAINTIFF**

**V.**                                           **CIVIL ACTION NO. 2:11-CV-173-KS-MTP**

**THE UNIVERSITY OF SOUTHERN**
**MISSISSIPPI, et al.**                                                             **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

For the reasons stated below, the Court **grants** Defendants' Motion for Summary Judgment [9] as to Plaintiff's claims under 42 U.S.C. § 1983. The Court declines to presently address Plaintiff's remaining state-law breach of contract claim and orders the parties to show cause why the Court should exercise pendent jurisdiction over it, rather than remand it to the Circuit Court of Forrest County, Mississippi.

## I. BACKGROUND

This is a Section 1983 case involving alleged discrimination on the basis of race and national origin in a graduate program at a public university. Plaintiff – a foreign-born Latina – was a graduate student in the marriage and family therapy ("MFT") program at the University of Southern Mississippi. To obtain a master's degree, students in the program must complete a certain number of clinical hours during which they provide therapy to clients at the University Clinic or through an externship. Plaintiff claims that she was assigned fewer clients at the University Clinic than her American-born, Caucasian peers. She also claims that she was denied opportunities to participate in externships which were open to her American-born,

Caucasian peers. She complained to multiple administrators, and she alleges that they failed to remedy the situation, that they failed to follow the University's grievance procedures, and that they retaliated against her because of her complaints.

Plaintiff brought this suit against the University and several individuals in their official and individual capacities. Defendant Saunders was the President of the University during these events. Defendant West was the chairperson of the Department of Child and Family Studies, which includes the MFT program. Defendant Woodrick was the Director of the Office of Affirmative Action/Equal Employment Opportunity ("AA/EEO"). Plaintiff asserted various claims under 42 U.S.C. § 1983. She claims that Defendants deprived her of rights guaranteed by the First Amendment, Fourteenth Amendment Due Process Clause, and Fourteenth Amendment Equal Protection Clause. She also asserted a state-law claim for breach of contract.

Early in the proceedings, Defendants filed both a Motion to Dismiss [7] and a Motion for Summary Judgment [9]. The Court eventually allowed Plaintiff to conduct discovery on all issues presented in Defendants' dispositive motions, and to amend her complaint.[1] As noted in the Court's previous order [83], the Amended Complaint [51]

---

[1] As the Court previously noted [83], it allowed this case to go off-track by permitting wide-ranging discovery. When a defendant asserts an immunity defense – as Defendants did here – the "district court must first find that the plaintiff's pleadings assert facts which, if true, would overcome the defense of qualified immunity." *Backe v. Leblanc*, 691 F.3d 645, 648 (5th Cir. 2012). "*After* the district court finds a plaintiff has so pled, if the court remains unable to rule on the immunity defense without further clarification of the facts, it may issue a discovery order narrowly tailored to uncover only those facts needed to rule on the immunity claim." *Id.*

In the Court's experience, however, it is often more efficient for defendants to

2

rendered Defendants' Motion to Dismiss [7] moot. But the Court decided to consider Defendants' Motion for Summary Judgment [9] after allowing Plaintiff an opportunity to file a sur-reply addressing the post-discovery arguments and evidence presented in Defendants' reply. The Motion for Summary Judgment [9] is now ripe.

## II. STANDARD OF REVIEW

Rule 56 provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.*, 627 F.3d 134, 138 (5th Cir. 2010). "Where the burden of production at trial ultimately rests on the nonmovant, the movant must merely demonstrate an absence of evidentiary support in the record for the nonmovant's case." *Cuadra v. Houston Indep. Sch. Dist.*, 626 F.3d 808, 812 (5th Cir.

---

reserve some qualified immunity arguments until after the completion of general discovery. Qualified immunity arguments generally fall into one of two categories: Rule 12(b)(6)-type arguments that a plaintiff has failed to allege the deprivation of a clearly established constitutional right, or Rule 56-type arguments that a defendant's conduct was objectively reasonable in light of the circumstances. Typically, the former can be addressed without discovery, while the latter can not.

In the Court's experience, immunity-related discovery as to the objective reasonableness of a public official's actions typically encompasses most – if not all – of the factual disputes in a case. One would expect this to be the case, as the defendant's actions must be assessed in light of the circumstances surrounding them. *Newman v. Guedry*, 703 F.3d 757, 762 (5th Cir. 2012). For this reason, defendants frequently elect to reserve their fact-based qualified immunity arguments until after general discovery has been completed. *See, e.g.,* Agreed Motion for Order Regarding Rule 16, Immunity Defenses, and Discovery, *Payne v. Univ. of S. Miss.*, No. 1:12-CV-41-KS-MTP (S.D. Miss. Mar. 22, 2012), ECF No. 6. The Court certainly does not discourage this practice, as it consistently yields more efficient case resolution.

3

2010) (punctuation omitted). The nonmovant "must come forward with specific facts showing that there is a genuine issue for trial." *Id.* (punctuation omitted). "An issue is material if its resolution could affect the outcome of the action." *Sierra Club, Inc.*, 627 F.3d at 138. "An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party." *Cuadra*, 626 F.3d at 812.

The Court is not permitted to make credibility determinations or weigh the evidence. *Deville v. Marcantel*, 567 F.3d 156, 164 (5th Cir. 2009). When deciding whether a genuine fact issue exists, "the court must view the facts and the inference to be drawn therefrom in the light most favorable to the nonmoving party." *Sierra Club, Inc.*, 627 F.3d at 138. However, "[c]onclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." *Oliver v. Scott*, 276 F.3d 736, 744 (5th Cir. 2002).

### III. DISCUSSION

#### A. *Section 1983 Claims Against the University*

First, Defendants argue that 42 U.S.C. § 1983 provides no cause of action against the University because it is not a "person" within the meaning of the statute. Defendants are correct. "[S]tates and their political subdivisions are not 'persons' within the meaning of 42 U.S.C. § 1983." *Cheramie v. Tucker*, 493 F.2d 586, 587 (5th Cir. 1974); *see also Will v. Mich. Dep't of State Police*, 491 U.S. 58, 64, 109 S. Ct. 2304, 105 L. Ed. 2d 45 (1989). The University is an arm of the state of Mississippi, and, therefore, it is not a "person" within the meaning of 42 U.S.C. § 1983. *Stotter v. Univ.*

*of Tex.*, 508 F.3d 812, 821 (5th Cir. 2007); *Chestang v. Alcorn State Univ.*, 820 F. Supp. 2d 772, 779 (S.D. Miss. 2011); *Senu-Oke v. Jackson State Univ.*, 521 F. Supp. 2d 551, 555-56 (S.D. Miss. 2007). For that reason, the Court grants Defendants' Motion for Summary Judgment as to Plaintiff's Section 1983 claims against the University.

### B. *Section 1983 Official Capacity Claims*

Defendants argue that Plaintiff's Section 1983 claims against the individual Defendants in their official capacities should be dismissed for the same reason as Plaintiff's Section 1983 claims against the University. Defendants are correct. "[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. It is *not* a suit against the official personally, for the real party in interest is the entity." *Kentucky v. Graham*, 473 U.S. 159, 166, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985). Accordingly, the Court grants Defendants' Motion for Summary Judgment with respect to Plaintiff's Section 1983 claims against the individual Defendants – Martha Saunders, Rebecca Woodrick, and Charles West – in their official capacities.

### C. *Section 1983 Individual Capacity Claims*

To make out a Section 1983 claim against a public official in their individual capacity, a plaintiff must show "that the defendant was either personally involved in the deprivation or that his wrongful actions were causally connected to the deprivation." *Jones v. Lowndes County, Miss.*, 678 F.3d 344, 349 (5th Cir. 2012). Supervisory officials may be held liable under Section 1983 only if they affirmatively participate in the acts causing the constitutional violation, or implement unconstitutional practices that result in constitutional injury. *Wernecke v. Garcia*, 591

F.3d 386, 401 (5th Cir. 2009). "[L]iability under the doctrine of respondeat superior is not cognizable in § 1983 actions." *Cozzo v. Tangipahoa Prish Council-President Gov't*, 279 F.3d 273, 286 (5th Cir. 2002).

1. *Procedural Due Process*

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests . . . ." *Mathews v. Eldridge*, 424 U.S. 319, 332, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976). "[F]or a person to have a procedural due process claim that damages or other relief can remedy, he must have been denied life, liberty, or property protected by the Fourteenth Amendment." *Wilson v. Birnberg*, 667 F.3d 591, 597 (5th Cir. 2012). Property or liberty interests may be "created and defined by existing rules or understandings that stem from an independent source such as state law," *Id.* at 598, including the policies and procedures of public universities. *Bd. of Regents v. Roth*, 408 U.S. 564, 578, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972). If a due process entitlement exists, the party enjoying the entitlement is entitled to "notice and an opportunity to be heard . . . at a meaningful time and in a meaningful manner." *Gibson v. Tex. Dep't of Ins. – Div. of Workers' Comp.*, 700 F.3d 227, 239 (5th Cir. 2012).

    a. **Clinical Assignments**

Defendants argue, among other things, that Plaintiff was not deprived of a life, liberty, or property interest protected by the Fourteenth Amendment. Plaintiff contends that she had a property interest in the clinical hours and externships that Defendants allegedly denied. "To have a property interest, . . . a person clearly must

6

have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Dennis Melancon, Inc. v. City of New Orleans*, 703 F.3d 262, 269-70 (5th Cir. 2012). "No discretion in the official and a reasonable expectation in the citizen are central elements of a protected property interest." *Hampton Co. Nat'l Sur. LLC v. Tunica County, Miss.*, 543 F.3d 221, 226 (5th Cir. 2008). Plaintiff has not provided any state law or University policy which creates an entitlement to clinical assignments or externships.

The MFT Handbook [8-2] provides:

> Ability to move into the clinical phase of the program is dependant on both academic achievements as well as emotional maturity and professional/ethical behavior.
>
> \* \* \*
>
> The majority of clinical faculty must agree that the student is ready to begin seeing clients. Students who are deemed not ready will work with the faculty to develop a remediation plan in order to progress.
>
> The ability to succeed in a clinical program such as this requires personal maturity and integrity. It is the responsibility of the faculty to screen students and to assess their personal qualifications and professional goals prior to allowing them to enter the clinical component of the program. During FAM 600, Pre-practicum in MFT, you will be required to take the 16PF as part of the evaluation process. At the end of your Pre-practicum, you will meet with the Clinical Faculty to discuss your readiness to enter the clinical component of the program. At that time, potential problems or challenges that might impact your success in the program will be identified. The MFT Program Faculty may recommend that a student participate in his/her own therapy with an outside source or take other necessary measures to insure [sic] clinical readiness. Other measures may include the implementation of a remediation plan and behavioral contracts that shall be signed by the student as well as the Program Faculty. Students will be free to withdraw

7

> from the program at any time he/she determines that he/she does not wish to comply with faculty recommendations.
>
> Assessment of student abilities to complete the clinical requirements is an ongoing process throughout your enrollment in the program. At the beginning and end of each semester, both supervisory and teaching faculty will meet to assess the progress of each student.
>
> * * *
>
> All recommendations are an effort to help you succeed. However, our primary concern must first be the welfare of the clients seeking assistance. If, during a student's program, the clinical faculty assess that a student does not have the personal and professional maturity needed to be an effective marriage and family therapy practitioner, the student will be advised of this and counseled to seek another area of study.

The handbook further provides that students must display "[c]linical readiness as determined by the faculty" to qualify for externships.

In summary, students may only participate in the clinical program upon the approval of the clinical faculty. The faculty's evaluations are ongoing, throughout the student's enrollment in the program. If, at any time, students disagree with the faculty's evaluation of their preparedness for the clinical setting and they are unwilling to comply with the faculty's proposed remedial measures, they are free to withdraw from the program. These handbook provisions do not create an entitlement, and no reasonable student would believe they do. Rather, it is clear that students participate in the clinical program at the discretion of the faculty. Accordingly, Plaintiff had no property interest in receiving clinical assignments or externships. *Cf. Regents of the Univ. of Mich. v. Ewing*, 474 U.S. 214, 223 n. 9, 106 S. Ct. 507, 88 L. Ed. 2d 523 (1985) (there must be a legitimate claim of entitlement under state law to create a

constitutionally protected property interest); *Roth*, 408 U.S. at 578 (where a university employment contract "supported absolutely no possible claim of entitlement," it did not create a property interest); *Dennis Melancon, Inc.*, 703 F.3d at 270 ("A constitutional amendment cannot be created – as if by estoppel – merely because a wholly and expressly discretionary state privilege has been granted generously in the past."); *Hampton Co. Nat'l Sur. LLC*, 543 F.3d at 226.[2]

   b.   **Grievance Procedures**

Plaintiff may also contend that she was deprived of a constitutionally protected property interest in the grievance procedures provided by various student handbooks. "The 5th Circuit has held that where a property right to procedural protections existed under state law, those procedural guarantees constituted a property interest protected under due process." *Whiting v. Univ. of S. Miss.*, 451 F.3d 339, 346 (5th Cir. 2006) (citing *Samuel v. Holmes*, 138 F.3d 173, 177 (1998)).

The Graduate Student Handbook [8-2] provides:

Students may file a grievance if experiencing difficulties with other
students, faculty members, staff members, or supervisors; or with the

---

[2]Additionally, it is apparent that the MFT faculty's decision regarding clinical assignments and externships entails substantial academic judgment."[C]ourts are reluctant to interfere with academic evaluations, particularly at the higher educational levels." *Senu-Oke v. Jackson State Univ.*, 283 F. App'x 236, 240 (5th Cir. 2008) (citing *Bd. of Curators v. Horowitz*, 435 U.S. 78, 85, 98 S. Ct. 948, 55 L. Ed. 2d 124 (1978)). "University faculties must have the widest range of discretion in making judgments as to the academic performance of students and their entitlement to promotion or graduation." *Ewing*, 474 U.S. at 225 n. 11. "A graduate or professional school is, after all, the best judge of its students' academic performance and their ability to master the required curriculum." *Horowitz*, 435 U.S. at 85 n.2.

program/departmental rules or procedures. Because graduate students may serve in several roles, University rules and regulations for resolving complaints or grievances may vary with the circumstances.

Due process ensures that decisions made about a student's academic performance or academic standing in a graduate degree program are not arbitrary or personally based. Due process requires that decision-making procedures be fairly applied to all students, appeal procedures are available to all students, and that students may challenge a decision without prejudice.

As part of due process, students may appeal any decision that is made by the university faculty or administration. Students also have the right to file a grievance regarding actions taken by the university or its representatives (e.g., faculty, administrators). Appeals and grievances are separate processes. There may be instances that involve both an appeal and a grievance, but the two actions will be handled separately. The department faculty strives to achieve fair and equitable resolution of complaints or grievances at the earliest possible time and at the lowest possible level. Thus, students who wish to appeal a decision or seek action on a matter of grievance are usually encouraged to seek clarification and review in consultation with a major advisor, the Director of Training, or the Department chairperson. *Students are encouraged to consult with the Director of Training and/or the Major Professor **before** bringing concerns to the attention of the Department Chair.*

Next, the MFT Student Handbook [8-2] provides the following Student Grievance

Procedures:

Part of the process of becoming a professional is learning to deal appropriately with disagreements or grievances. If you experience a problem with a faculty member you are expected to address those issues with that person as a first step. If there is not a satisfactory resolution, you are to make an appointment with the program director (Dr. Hinton) to discuss it. If you cannot resolve the problem at that level you may seek an appointment with the department chair (Dr. Ann Blackwell).[3]

The University of Southern Mississippi Student Handbook further

---

[3]Defendant Charles West was the department chair when the events of this case occurred.

10

outlines the procedures for student grievances and can be found beginning on page 66 . . . . Students are strongly encouraged to follow these outlined procedures when necessary.

Finally, the Student and Faculty Handbook provides the following Discrimination Complaint Procedure [73-11]:

> **7.9.4 Formal Complaint Procedure.** If any employee[4] believes that he or she has been the subject of discrimination and wishes to make a formal complaint, the following procedures will apply:
>
> (a) Complaints must be received in writing in the Office of Affirmative Action/Equal Employment Opportunity within 30 days from the date of the allegedly discriminatory act. At the discretion of the AA/EEO Office, in certain situations complaints filed outside the time limit may be investigated . . . . The written complaint must include the complainant's name, address, and signature and must include a brief written description of the alleged discriminatory act, as well as the name of the person allegedly responsible.
>
> (b) The director of the Office of AA/EEO will meet with the complainant, explain the complaint procedure, and determine whether the complaint warrants further investigation into the allegations. If the director determines that no discriminatory act has occurred, the AA/EEO Office will notify the complainant of the decision in writing within 15 days of receipt of the complaint. The notification will explain why the complaint does not constitute unlawful discrimination and may inform the complainant of other avenues of redress, if appropriate.
>
> (c) If the Office of AA/EEO determines that the complaint may involve discrimination, the complainant and respondent will

---

[4]The parties described this document as the "Student and Faculty Handbook," and the Court takes them at their word. On its face, however, the document only governs discrimination complaints by employees. The parties did not address this issue in their briefs, and the record contains no evidence that Plaintiff was a University employee. Regardless, the Court will assume that the document is applicable here.

11

be notified of the decision in writing. The director of the Office of AA/EEO will investigate the allegations. The director will inform the following parties that a complaint has been filed and that an investigation will be conducted: the complainant, respondent, respondent's immediate supervisor and department head, respondent's dean, the Provost, and the President.

(d) Upon completion of the investigation, the director of the Office of AA/EEO will issue a written report stating the findings of the investigation and whether there is sufficient evidence to support the allegations of the complaint. The director shall issue written notice of the decision to the parties set out in paragraph (3) above.

(e) If the director finds that a violation of University policy has occurred, the director will recommend to the Provost that a directive be issued to stop the discriminatory behavior and recommending appropriate disciplinary action against the respondent. When appropriate, coercive action will be recommended to eliminate the effect of the discriminatory behavior. Within 15 days of the receipt of the report from the AA/EEO director, the Provost will issue written notice of disciplinary action.

**7.9.5 Appeal Procedure.** The complainant or respondent may appeal the decisions of the AA/EEO director and/or the decision of the Provost by notifying the President, in writing, within 15 days from the date of the decision from which the party appeals. The complainant or respondent may request a review based upon the following grounds:

(a) That the complaint procedure was not followed.

(b) That new information can be presented that was not previously available and which could have a material affect upon the findings. The President shall be the sole judge of whether such evidence or information will be admitted.

(c) That a decision was made in an arbitrary and capricious manner.

At the time of the appeal, the appellant shall file a detailed, written explanation why he or she believes the appeal meets the criteria set forth

above. If the President determines that none of the grounds for appeal has been satisfied, the parties shall be notified of the decision in writing within 15 days of filing the appeal. If the President determines that at least one of the grounds for appeal has been met, the President shall so notify all of the parties in writing. The President will review all materials in the record and may invite both parties to present information to the President. Once the President has reached a decision, he or she shall notify all parties of the decision within 30 days from the date the appeal was filed.

The grievance procedures in the Graduate Student Handbook and MFT Handbook do not impose any duties on Defendant Saunders. The Student and Faculty Handbook's Formal Complaint Procedure only brings Saunders into the process at the time of appeal, and it is undisputed that Plaintiff did not appeal the AA/EEO Office's actions. Therefore, Saunders did not personally deprive Plaintiff of any grievance procedures, and Saunders can only be liable for the actions of her subordinates if she affirmatively participated in their actions or implemented unconstitutional practices that caused Plaintiff's injury. *Wernecke*, 591 F.3d at 401. Plaintiff has not produced any evidence of such participation or implementation, and her procedural due process claim against Saunders fails.

As for Defendant West, the Student and Faculty Handbook's grievance procedure imposes no duties on department chairs. The Graduate Student Handbook and MFT Handbook merely encourage students to consult with the department chairperson. Neither document imposes duties on department chairpersons in resolving a student appeal or grievance. Plaintiff requested a meeting with West in December 2008 [73-9]. Although he encouraged her to first meet with Dr. Hinton (the Clinical Director) and Dr. Grames (the Program Director), Plaintiff admits [48-1] that

13

West met with her. If the Graduate Student Handbook and MFT Handbook imposed any duty on West, it was merely that he meet with Plaintiff. He did so, and Plaintiff has not presented any evidence that he affirmatively participated in any unconstitutional actions or implemented unconstitutional procedures. *Id.* Therefore, Plaintiff's procedural due process claim against him fails.

Neither the Graduate Student Handbook nor the MFT Handbook impose any duty on Defendant Woodrick, the Director of the Office of AA/EEO. As for the Student and Faculty Handbook's procedures, Defendant admits that Woodrick failed to follow them. Plaintiff filed her AA/EEO complaint [73-13] on June 2, 2009. Woodrick asked [73-14] for a meeting to clarify Plaintiff's claims, and Plaintiff informed Woodrick that she had retained counsel. Woodrick forwarded Plaintiff's AA/EEO complaint to the University's attorney, who stated that he would arrange a meeting with Plaintiff and her counsel. That meeting never occurred, though, and the procedures outlined in the Student and Faculty Handbook were not followed.

Defendant argues that Defendant Woodrick enjoys qualified immunity from liability for Plaintiff's procedural due process claims. After a defendant invokes the defense of qualified immunity, the plaintiff has the burden of proving its inapplicability. *Tolan v. Cotton*, 713 F.3d 299, 2013 U.S. App. LEXIS 8548, at *11 (5th Cir. 2013). The plaintiff must show: "first, the official's conduct violated a constitutional or statutory right; and second, the official's actions constituted objectively-unreasonable conduct in the light of clearly established law at the time of the conduct in question." *Id.* (punctuation omitted). "The second prong of the qualified

immunity test is understood as two separate inquiries: whether the violated constitutional rights were *clearly established at the time of the accident*; and, if so, whether the defendant's conduct was *objectively unreasonable* in the light of that then clearly established law." *Id.* (punctuation omitted).[5] The reasonableness of the defendant's actions must be judged from the perspective of a reasonable official in the same situation with the same knowledge. *Newman,* 703 F.3d at 762 (officer's actions judged from perspective of a reasonable officer confronted by the same facts and circumstances, without regard to intent or motivation).

Plaintiff has not carried her burden of demonstrating that Woodrick's actions were objectively unreasonable under the circumstances. When Woodrick received

---

[5]Plaintiff argues that qualified immunity does not apply in racial discrimination cases, but she did not cite any authority in support of this argument. When a plaintiff's allegations are sufficient to state a claim for intentional discrimination, an immunity defense will generally be foreclosed at the pre-discovery stage, as intentional racial discrimination is never objectively reasonable. *See Piatt v. City of Austin*, 378 F. App'x 466, 469 (5th Cir. 2010); *Blackwell v. Laque*, 275 F. App'x 363, 367-68 (5th Cir. 2008) (where plaintiff established a prima facie case of racial discrimination and the court was required to view the facts in the light most favorable to plaintiff, employer's actions were not objectively reasonable under clearly established law); *Upchurch v. City of Moss Point*, 2011 U.S. Dist. LEXIS 124116, at *21-*22 (S.D. Miss. Oct. 26, 2011); *Patton v. Hinds Cnty. Juvenile Det. Ctr.*, 2011 U.S. Dist. LEXIS 77955, at *36 (S.D. Miss. July 18, 2011). Likewise, it is not objectively reasonable for a government authority to violate a citizen's constitutional rights, and genuine disputes of material fact on that issue will foreclose the application of a qualified immunity defense at the summary judgment stage. *See, e.g. Izen v. Catalina*, 382 F.3d 566, 574 (5th Cir. 2004).

Here, the parties conducted discovery, and there is a pending motion for summary judgment. It is appropriate, therefore, for the Court to assess the evidence and determine whether any genuine dispute of material fact exists on these issues. Qualified immunity may apply if there is no genuine dispute of material fact regarding Woodrick's motivation in deviating from the standard grievance procedures.

Plaintiff's complaint, Plaintiff had been "passively threatening legal action" [73-9] for several months. When Woodrick contacted Plaintiff to schedule an appointment, Plaintiff had retained an attorney who had filed numerous lawsuits against the University.[6] Accordingly, Woodrick decided that she should proceed through counsel. The record contains no evidence that this decision was motivated by discriminatory intent. Plaintiff has not provided any evidence or law demonstrating that Woodrick's departure from the University's formal grievance procedure was objectively unreasonable in light of these circumstances. Therefore, Woodrick enjoys qualified immunity with respect to Plaintiff's procedural due process claim.

2. *Substantive Due Process*

"Substantive due process bars certain arbitrary, wrongful government actions regardless of the fairness of the procedures used to implement them." *Lewis v. Univ. of Tex. Med. Branch*, 665 F.3d 625, 630 (5th Cir. 2011). It "requires only that public officials exercise professional judgment, in a nonarbitrary and noncapricious manner, when depriving an individual of a protected property interest." *Id.* at 631. The "plaintiff must show that the decision was made without a rational connection between the known facts and the decision or between the found facts and the evidence." *Id.* The public official's actions must shock the conscience. *Id.* Plaintiff's substantive due

---

[6]*See, e.g.,* Notice of Removal, *Whiting v. Univ. of S. Miss.*, No. 2:02-CV-781-IRL (S.D. Miss. Sept. 19, 2002), ECF No. 1; Notice of Removal, *McKean v. Univ. of S. Miss.*, No. 2:05-CV-34-KS-MTP (S.D. Miss. Jan. 31, 2005), ECF No. 1; Notice of Removal, *Luce v. Univ. of S. Miss.*, No. 2:06-CV-240-KS-MTP (S.D. Miss. Oct. 23, 2006), ECF No. 1; Notice of Removal, *Nichols v. Univ. of S. Miss.*, No. 2:08-CV-128-KS-MTP (S.D. Miss. June 12, 2008), ECF No. 1.

process claims arise from Defendants' alleged failure to provide her with the opportunity to obtain enough clinical hours to obtain a Masters degree in marriage and family therapy. Plaintiff contends that Defendants deprived her of the chance to gain clinical hours because of her race, ethnicity, or national origin. Plaintiff's substantive due process claims fail for two reasons.

First, it is undisputed that none of the individual Defendants made the decisions which allegedly deprived Plaintiff of a constitutionally protected interest. Saunders was the University's president, and Woodrick was the director of the office of AA/EEO. Neither had any involvement with the MFT program's internal academic affairs. West was the chairperson of the Department of Child and Family Studies, which includes the MFT program. But Plaintiff has not presented any evidence that he made decisions regarding clinical assignments or externships. Rather, the evidence indicates that his subordinates made those decisions, and none of them were named as defendants in this action. Plaintiff has not presented any evidence that West affirmatively participated in the decisions regarding clinical assignments or externships, or that he implemented an unconstitutional practice that caused her to receive fewer clinical hours. *See Wernecke*, 591 F.3d at 401. Therefore, he is not liable for the alleged deprivation.

Second, Plaintiff did not have a constitutionally protected property interest in receiving clinical assignments or externships. As explained above, students may only participate in the clinical program upon the approval of the clinical faculty. The MFT Handbook does not create an entitlement to clinical hours, and no reasonable student would believe it does. Students participate in the clinical program at the discretion of

17

the faculty. Accordingly, Plaintiff had no constitutionally protected property interest in receiving clinical assignments or externships. *Cf. Ewing*, 474 U.S. at 223 n. 9; *Roth*, 408 U.S. at 578; *Dennis Melancon, Inc.*, 703 F.3d at 270; *Hampton Co. Nat'l Sur. LLC*, 543 F.3d at 226.[7]

*3. Equal Protection*

"To establish a Fourteenth Amendment equal-protection claim, [Plaintiff] must allege and prove that [she] received treatment different from that received by similarly situated individuals and that the unequal treatment stemmed from a discriminatory intent." *McFaul v. Valenzuela*, 684 F.3d 564, 577 (5th Cir. 2012). Plaintiff's equal protection claims stem from two alleged inequalities. First, she claims that Defendants gave her fewer clinical hours than they gave Caucasian and American-born students. But, as explained above, none of the individual Defendants made decisions regarding clinical assignments and externships. Second, Plaintiff argues that Defendants failed to remedy what she believed was unlawful discrimination, but she failed to identify a similarly situated individual of a different race, ethnicity, or national origin whose complaints of discrimination were handled differently. For these reasons, her equal protection claims fail.

*4. First Amendment*

Plaintiff claims that Defendants retaliated against her for criticizing one of her

---

[7]Also, the Court is "reluctant to interfere with academic evaluations, particularly at the higher educational levels." *Senu-Oke*, 283 F. App'x at 240; *see also Ewing*, 474 U.S. at 225 n. 11; *Horowitz*, 435 U.S. at 85 n.2.

professors and claiming that she was a victim of unlawful discrimination. She claims they denied clinical assignments and externships and revealed her confidential assessment of one of her professors in retaliation for her speech. "The First Amendment prohibits not only direct limitations on speech but also adverse government action against an individual because of her First Amendment freedoms." *Izen v. Catalina*, 398 F.3d 363, 367 (5th Cir. 2005). To make out a retaliation claim, a plaintiff "must show that (1) they were engaged in a constitutionally protected activity, (2) the defendant's actions caused them to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity, and (3) the defendants' adverse actions were substantially motivated against the plaintiff's exercise of constitutionally protected conduct." *Id.* (punctuation omitted).

Plaintiff's First Amendment retaliation claims suffer from a fundamental flaw: she has not provided evidence showing that the individual Defendants participated in, approved, or implemented policies which caused the alleged constitutional injuries. *See Wernecke*, 591 F.3d at 401; *Cozzo*, 279 F.3d at 286. As the Court already noted, the record contains no evidence that the individual Defendants made decisions regarding clinical assignments and externships. Plaintiff also failed to provide evidence that the individual Defendants revealed the disputed teachers' evaluation. In fact, Plaintiff affirmed [73-2, 73-23] that the alleged retaliatory acts were committed by individuals who are not parties to this lawsuit. Accordingly, Plaintiff's First Amendment retaliation claims against the individual Defendants fail.

## IV. BREACH OF CONTRACT

The Court presently declines to address Defendants' Motion for Summary Judgment [9] as it relates to Plaintiff's remaining state-law claim for breach of contract. The Fifth Circuit's general rule is to "dismiss state claims when the federal claims to which they are pendent are dismissed." *Enochs v. Lampasas Cnty.*, 641 F.3d 155, 161-62 (5th Cir. 2011). The Court orders the parties to show cause why it should exercise pendent jurisdiction over Plaintiff's breach of contract claim, rather than remand it to the Circuit Court of Forrest County, Mississippi. Each side shall file a brief within seven (7) days of the entry of this opinion, and each side may then have seven (7) days to file a response to the opposing party's brief, if necessary.

## V. CONCLUSION

For the reasons stated above, the Court **grants** Defendants' Motion for Summary Judgment [9] as to Plaintiff's claims under 42 U.S.C. § 1983. The Court declines to presently address Plaintiff's remaining state-law breach of contract claim and orders the parties to show cause why the Court should exercise pendent jurisdiction over it, rather than remand it to the Circuit Court of Forrest County, Mississippi.

SO ORDERED AND ADJUDGED this 29th day of May, 2013.

*s/Keith Starrett*
UNITED STATES DISTRICT JUDGE